UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| FRED REEVES, #241575, | ) |
| Plaintiff, | ) Case No. 1:04-cv-605 |
| v. | ) Honorable Robert Holmes Bell |
| THOMAS SWEET, et al., | ) **REPORT AND RECOMMENDATION** |
| Defendants. | ) |

This is a civil action brought *pro se* by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at the Alger Maximum Correctional Facility located in Munising, Michigan. The events giving rise to this lawsuit occurred on January 29, 2004, while plaintiff was an inmate at the Ionia Maximum Correctional Facility (IMAX), located in Ionia, Michigan. IMAX historically housed Michigan's least manageable and highest security level prisoners. *See Riggins-El v. Toombs*, No, 96-2484, 1997 WL 809980, at * 1 (6th Cir. Dec. 23, 1997); *see also Crump v. Curtis*, 50 F. App'x 217, 218 (6th Cir. 2002)("IMAX houses prisoners classified to the highest security level in the MDOC system."). Plaintiff's complaint alleges that four IMAX corrections officers, Thomas Sweet, Jeffrey Ferguson, R. Wood, and Lieutenant Miller, violated plaintiff's rights under the Eighth Amendment's Cruel and Unusual Punishments Clause by purportedly allowing plaintiff to be exposed, second hand, to a chemical agent that the guards were using against an incorrigible prisoner housed in the general area of plaintiff's cell. Plaintiff seeks an award of monetary damages. The

matter is before me on the defendants' motion for summary judgment. (docket # 24). For the reasons set forth herein, I recommend that defendants' motion be granted.

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Terry v. LaGrois*, 354 F.3d 527, 530 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Tucker v. Union of Needletrades Indus. & Textile Workers*, 407 F.3d 784, 787 (6th Cir. 2005); *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 614 (6th Cir. 2005).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once defendant shows that

"there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004). The motion for summary judgment forces the non-moving party to "put up or shut up" and present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989); *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 124 F. App'x 329, 331 (6th Cir. 2005). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). "A nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations. Instead, the nonmoving party must present evidence to defeat a properly supported motion for summary judgment. The party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or to refute the proof of the moving party in some material portion, and the opposing party may not merely recite the incantation, 'credibility,' and have a trial on the hope that a jury may believe factually uncontested proof." *Fogerty v. MGM Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004)(citations omitted).

### **Proposed Findings of Undisputed Facts**

The following facts are established beyond genuine issue. At the time of the incident, IMAX prisoners were housed in individual cells. The cells had a single solid door with a narrow window allowing guards to view the cell's occupant, and covered slots in the door permitting food to be introduced and allowing guards to apply and remove the restraints that are mandatory for any

prisoner's out-of-cell movement. On January 29, 2004, plaintiff was housed in cell #2-37. Prisoner Dege was housed in cell #2-25. Prisoner Dege's cell was across the hall and four cells down from plaintiff's, a distance of roughly 45 feet. It is occasionally necessary for IMAX guards to utilize a chemical agent as a means to compel compliance by a recalcitrant prisoner, instead of resorting to more physical means. Whenever a chemical agent is administered, it is generally confined to the individual prisoner's cell. Prison guards close the window shutters on other cells in the area before administering the chemical agent. It is undisputed that plaintiff's cell window was closed on January 29, 2004, before the chemical agent was introduced into Prisoner Dege's cell. If the chemical agent suffices to produce compliance by the disruptive prisoner, prison guards apply the necessary restraints through the door slots, open the door, and escort the prisoner away to the shower area. Once the prisoner is removed, his cell is cleaned and large fans are placed in the hallway to direct away any lingering fumes. IMAX's air handling unit is designed to prevent the chemical agent from circulating cell-to-cell. In instances where, for medical reasons, a prisoner must be evacuated from the area prior to the use of the chemical agent, prison health care services issues a special notification advising guards of the requirement. On January 29, 2004, IMAX's health care services had not issued any special notification indicating that plaintiff needed to be evacuated from his cell for medical reasons.

       The defendants are four of the prison guards who, on the date and time in question, were engaged in the prison's response to the disturbance caused by Prisoner Dege. Plaintiff's affidavit states, "Prior to use of chemical agents I told Officer Ferguson during rounds, called out to Lt. Miller, told Officer Sweet as he came by, and told Officer Wood as she was closing my cell window cover, that I needed to be removed from my cell prior to the use of chemical agents and

placed in a secure area because the chemical agents would exacerbate my asthma." Prisoner Raheem-X states that he was confined in Unit #2's cell # 29 and overheard plaintiff make these requests. Plaintiff recently submitted an affidavit from Prisoner Joshua Brooks-El. (docket # 57). Prisoner Brooks-El states that he was housed in cell # 1 of Unit # 2, a cell located somewhere outside the area shown on the map of IMAX's Unit # 2 lower level where plaintiff and Prisoner Dege were housed. (docket #25, attachment). Prisoner Brooks-El states that he asked to be moved from the area prior to the use of chemical agents, that plaintiff usually moved with him when IMAX guards were preparing to administer chemical agents, and that on January 29, 2004, plaintiff was not moved. Defendants dispute that plaintiff made any requests to be moved, but for purposes of the present motion, plaintiff's assertion that he made requests to be moved must be taken as true.

Prisoner Dege states that on January 29, 2004, he attempted to prevent the chemical agent from being sprayed into his cell by sticking his right arm out of the food slot, and believes that in this manner he caused a portion of the chemical agent used against him to be released into the hallway.

Plaintiff states that after the chemical agent was used against Prisoner Dege, plaintiff experienced breathing difficulties and chest pains.[1] He states that Officers Wood and Ferguson

---

[1] On January 29, 2004, roughly eight hours after the incident involving Prisoner Dege, plaintiff received a major misconduct citation for assaulting Officer Tkash. Plaintiff allegedly opened up his cell's food slot and used his inhaler to throw urine on Officer Tkash. Defendants cite this incident as evidence that plaintiff's medical condition was not as severe as plaintiff now claims. Because plaintiff's assault on Officer Tkash occurred approximately eight hours after plaintiff was allegedly exposed to the chemical agent, the major misconduct records are of marginal probative value. Plaintiff never alleged that he was incapacitated by the chemical agent, much less that he remained in that state for eight hours. Likewise, there is no time stamp on the multiple grievances plaintiff drafted on January 29, 2004, against other guards based upon January 26, 2004 events involving plaintiff "taking the food slot hostage" and challenging the propriety of being required to wear a "spitter's mask" (docket # 40 attachments). Because it is impossible to determine on the

would not comply with plaintiff's request that they retrieve his inhaler from the officer's panel. Defendants Wood and Ferguson state that plaintiff made no such requests. Plaintiff states that the reason that he cannot provide any evidence that the January 29, 2004 incident caused him to suffer an asthma attack or any serious harm is that his request for health care services was denied. There is no record of plaintiff's making any medical requests on January 29, 2004. Plaintiff's medical records show that on the morning of January 30, 2004, plaintiff's uncooperative behavior prevented a nurse from checking his blood pressure.

Plaintiff filed his complaint on September 9, 2004.

## **Discussion**

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs. The authority controlling prisoner medical treatment claims is *Estelle v. Gamble*, 429 U.S. 97 (1976). In that case, the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976); *see Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983).

---

present record whether plaintiff drafted these grievances before or after purported exposure to the chemical agent, the grievances are not reliable indicators of plaintiff's health.

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on the either component of his claims against the defendants.

The first requirement of *Estelle* is that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*, 390 F.3d at 897. A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 389 F.3d 868, 874 (6th Cir. 2005). Plaintiff falls far short of satisfying the objective component. IMAX health care services had not issued any special notification to guards indicating that plaintiff's asthma was so severe that it required that plaintiff be moved prior to the use of the chemical agent anywhere in plaintiff's general vicinity. Plaintiff has not presented evidence demonstrating that his reaction to the purported second-hand exposure was objectively so severe that it would have been apparent to

defendants that plaintiff required immediate medical care, or that plaintiff suffered any adverse medical consequences as a result of any delay in his receipt of medical care. *See Jarriett v. Wilson*, 414 F.3d 634, 643 (6th Cir. 2005).

The second prong under Estelle requires a showing of deliberate indifference to plaintiff's serious need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837; *see Jarriett*, 414 F.3d at 643. The Sixth Circuit's recent decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005) summarized the requirements of the subjective component of a deliberate indifference claim:

> The subjective component, by contrast, requires a showing that the prison official possessed "a sufficiently culpable state of mind in denying medical care." *Id.* (quoting *Farmer,* 511 U.S. at 834, 114 S. Ct. 1970). Deliberate indifference requires a degree of culpability greater than mere negligence, but less than "acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835, 114 S. Ct. 1970. The prison official's state of mind must evince "deliberateness tantamount to intent to punish." *Horn v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.1994). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id.* Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838, 114 S. Ct. 1970.

*Miller v. Calhoun County*, 408 F.3d at 813. Plaintiff has not identified or supported with evidence any excessive risk to his health or safety disregarded by the defendants. I recommend that defendants' motion for summary judgment be granted.

Alternatively, defendants seek judgment in their favor on the basis of qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government

officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The standard to be applied in deciding a claim of qualified immunity is one of objective reasonableness. *Id.* The question whether qualified immunity attaches to an official's actions is a purely legal issue for the trial court. *See Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004); *Summar v. Bennett*, 157 F.3d 1054, 1057 (6th Cir. 1998); *Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir. 1987).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), emphasized that the defense of qualified immunity must be addressed in proper sequence. The initial inquiry must be whether the plaintiff has alleged and supported with evidence facts showing that the officers' conduct violated a constitutional right. *Saucier*, 533 U.S. at 201; *see Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 940-41 (6th Cir. 2004); *Summers*, 368 F.3d at 888; *Akers v. McGinnis*, 352 F.3d 1030, 1042 (6th Cir. 2004). Plaintiff has not satisfied this initial requirement for the reasons previously stated.

Assuming *arguendo* that the initial requirement could be answered in the affirmative, plaintiff would still fall short of satisfying the second requirement as to any defendant: that the right plaintiff claims the defendant violated was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right. 533 U.S. at 201. "A constitutional right must be clearly established in a particularized sense. 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Rippy v. Hattaway*, 270 F.3d 416, 424 (6th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"It is crucial, the Supreme Court has noted, that the second inquiry 'be undertaken in light of the specific context of the case, not as a broad general proposition.' Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201); *see Weaver v. Shadoan*, 340 F.3d 398, 407 (6th Cir. 2003); *Risbridger v. Connelly*, 275 F.3d 565, 569 (6th Cir. 2002). The court, of course, need not find a case in which the very action in question has previously been held unlawful, but in light of pre-existing law, the unlawfulness must be apparent. *See Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003); *Risbridger*, 273 F.3d at 569; *Comstock*, 273 F.3d at 702. However, "'qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Rippy*, 270 F.3d at 424 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). The court must focus on whether, at the time defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002); *Comstock v. McCrary*, 273 F.3d at 702; *Walton v. City of Southfield*, 995 F.2d 1331, 1335-36 (6th Cir. 1993); *Garvie v. Jackson*, 845 F.2d 647, 649 (6th Cir. 1988). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every-like situated, reasonable government agent that what the defendant is doing violates federal

law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key* 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

      Defendants were engaged in the prison's response to the disturbance created by Prisoner Dege. It is undisputed that the use of the chemical agent by prison guards was directed against Prisoner Dege. The Supreme Court and the Sixth Circuit have never held that the use of a chemical agent is a *per se* violation of the Eighth Amendment. *See Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992). Here, plaintiff's exposure, if any was secondary. "Exposure to pepper spray is not a serious medical need." *Bonnin v. Eau Claire County*, No. 03-C-65-C, 2004 WL 67478, at *4 (W.D. Wis. Jan. 13, 2004). There is and was no constitutionally recognized right against second-hand exposure to a chemical agent, nor any guaranteed right to transfer to another area of the prison prior to its use. *Gargan v. Gabriel*, 50 F. App'x 920, 924 (10th Cir. 2002); *Eccleston v. Oregon*, No. 03-6148-K1, 2004 WL 2538304, at * 4 (D. Ore. Nov. 9, 2004); *Koon v. Dyson*, No. C/A 8:01-3398-22RRY, 2004 WL 3217870, at * 4-5 (D. S.C. Sept. 30, 2004); *Jones v. Shoy*, No. Civ. A. L-02-3079, 2003 WL 23350219, at * 2 (D. Md. May 6, 2003), *aff'd*, 68 F. App'x 516 (4th Cir. 2003). I find that defendants are entitled to judgment in their favor as a matter of law on the alternative basis of qualified immunity.

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motion for summary judgment (docket # 24) be granted, and that judgment be entered in defendants' favor of defendant on all plaintiff's claims.

Dated:  September 8, 2005               /s/  Joseph G. Scoville
                                        United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).